T. RANDOLPH CATANESE, ESQ., CA Bar No. 110308
randy@cataneselaw.com
BRADLEY W. GOULD, ESQ., CA Bar No. 327989
brad@cataneselaw.com
**CATANESE & WELLS, A LAW CORPORATION**
4580 E. Thousand Oaks Blvd., Suite 250
Westlake Village, California, 91362
Telephone: 818-707-0407
Facsimile: 818-707-1161
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY KAMINS, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> ALAN WALDMAN, an individual, and WALDMAN HORSES B.V., a Netherlands Limited Liability Corporation, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR:** <br><br> **(1) BREACH OF CONTRACT;** <br> **(2) BREACH OF IMPLIED WARRANTY OF FITNESS FOR INTENDED USE AND SUITABILITY;** <br> **(3) INTENTIONAL MISREPRESENTATION;** <br> **(4) NEGLIGENT MISREPRESENTATION;** <br> **(5) FRAUDULENT INDUCEMENT;** <br> **(6) BREACH OF FIDUCIARY DUTY; AND,** <br> **(7) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200,** *et seq.* **(UNFAIR COMPETITION LAW).** <br><br> **DEMAND FOR JURY TRIAL** |

1

## COMPLAINT

Plaintiff GARY KAMINS hereby alleges for his complaint against Defendants ALAN WALDMAN and WALDMAN HORSES, B.V., on personal knowledge as to Plaintiff's own activities, and on information and belief as to the activities of others, as follows:

## THE PARTIES

1.    Plaintiff GARY KAMINS (hereinafter "KAMINS") is, and at all times mentioned was, an individual citizen of the state of California and residing in the state of California. KAMINS resides within this judicial district.

2.    Defendant ALAN WALDMAN (hereinafter "WALDMAN") upon information and belief was and is, and at all times herein mentioned, an individual citizen of the foreign country of the Netherlands and residing in the Utrecht province of the Netherlands.

3.    Defendant WALDMAN HORSE B.V. (hereinafter "WALDMAN HORSES") upon information and belief is and was, and at all times herein mentioned, a limited liability company or a like entity formed and registered in the foreign country of the Netherlands. WALDMAN HORSES was established/incorporated in the Netherlands in 2002 with a company number KVK 30178459. WALDMAN HORSES operates in the Netherlands from a location at Loenen Aan De Vecht.

4.    Plaintiff is informed and believes and on that basis alleges that at all times

2

COMPLAINT

mentioned herein, each of the Defendants referred to herein, including each fictitiously named Defendant, was the agent, servant, employee, controlling shareholder, partner, *alter ego*, and/or joint venture of each of the other Defendants, and was at all times acting within the course, purpose, scope, and authority of such agency, employment, *alter ego*, and/or venture and with the permission or consent of the other Defendants with respect to the acts, occurrences, and/or omissions alleged herein.

5.     Plaintiff is further informed and believes, and on that basis, alleges that each act, occurrence, or omission alleged herein, was authorized or ratified by each and every other Defendant mentioned herein. Each Defendant agreed to or consented to act in concert with each to commit the acts alleged herein as co-conspirators. Plaintiff further alleges that all Defendants, for each act and omission alleged herein, had a unity of interest with each of the other Defendants. Each Defendant intended that the acts alleged herein be committed. Plaintiff was harmed by each Defendant as co-conspirators to the acts alleged herein and each Defendant is responsible for the harm because each Defendant was a part of a conspiracy to commit the acts.

6.     WALDMAN HORSES was established by Defendant WALDMAN in 2002 as the owner and operator of WALDMAN HORSES. WALDMAN, on information and belief, operated and managed WALDMAN HORSES without regard to required formalities of a limited liability company or like company under the laws of the Netherlands. Further, WALDMAN operated and managed WALDMAN HORSES as an

*alter ego* of each other and for the purpose of perpetrating a fraud and violations of Plaintiff's rights as further described in this Complaint. A unity of interest and ownership existed between WALDMAN and WALDMAN HORSES such that the individuality and separateness of these Defendants should be ignored and the adherence to the fiction of the separate existence of WALDMAN HORSES distinct from WALDMAN would permit an abuse of the limited liability company or like entity under the laws of the Netherlands privilege and would sanction fraud and promote an injustice upon the Plaintiff. Accordingly, it is proper for the Court to disregard the separate legal existence of WALDMAN HORSES and to treat WALDMAN HORSES as the *alter ego* of WALDMAN.

7.    WALDMAN graduated from Pepperdine University in Malibu, California in 1998. This is confirmed on the internet website for WALDMAN HORSES at www.waldmanhorses.com/resume. According to the WALDMAN HORSES website, WALDMAN began purchasing and selling horses in California and elsewhere after he graduated from Pepperdine University in 1998.

8.    In the United States of America there is an equine horse registry known as the *United States Equestrian Federation* (hereinafter "USEF"). The USEF is a data registry which compiles information of owners, trainers, riders and horses who participate in various types of equine competition. A recent search of the USEF website confirmed that WALDMAN is currently identified as an owner of horses sold to California residents.

Furthermore, WALDMAN is identified as a *USEF Fan*. The USEF references a *USEF Fan* in the following manner "[i]t's a way for enthusiast, not just competitors, to engage with the national governing body for equestrian sports in the US."

9.  In Europe there is an equine horse registry known as *Federation Equestre Internationale* (French for the Federation for Equine Sports – the global governing body for equine competition such as dressage show jumping and eventing – hereinafter "FEI"). WALDMAN is identified as a competitor for the United State of America.

10.  In an article in the magazine *World of Showjumping* dated February 3, 2025, WALDMAN was featured as a breeder, trainer and seller of showjumpers. Plaintiff is informed and believes and on that basis alleges that WALDMAN intended and did use the referenced article to solicit residents of California to purchase horses offered for sale by WALDMAN at WALDMAN HORSES.

## JURISDICTION AND VENUE

11.  This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332 because the claims are entirely between a citizen of the state of California (the Plaintiff) and a citizen and a limited liability entity of the country of the Netherlands (the Defendants), and the amount in controversy exceeds the amount of $75,000.00, exclusive of interest and costs. Plaintiff is informed and believes that Defendant WALDMAN is the sole owner and sole managing member of Defendant WALDMAN HORSES and therefore there exists complete diversity between the Plaintiff and the Defendants.

12. Venue is proper in this district pursuant to 28 U.S.C. §§1391(a) and 1391(b) because a substantial part of the events or omissions giving rise to the claims arose in this judicial district. Because the Defendants have sufficient minimum contacts with the chosen forum, this Court has personal jurisdiction over the Defendants.

## NATURE OF DISPUTE

13. Plaintiff KAMINS is the father of GABBY KAMINS (hereinafter "GABBY"), his daughter. When GABBY was a minor and with KAMINS' encouragement, GABBY began riding and competing with horses. As an adult over the age of eighteen years GABBY continued her development as a rider of horses. In particular, GABBY focused on sport horse riding and competition with the supervision and the assistance of a professional horse trainer CHARMAINE LEVINSON also known as "CHA CHA."

14. In or about August of 2021, GABBY and CHA CHA travelled to Europe with the intent of touring sport horse barns looking for one or more horses for purchase by KAMINS. KAMINS and GABBY together agreed that the purchase of a high-quality sport horse would advance GABBY's development as a sport horse rider and hopefully give GABBY the opportunity to succeed in organized sport horse competition. CHA CHA acted as a fiduciary for KAMINS and GABBY as their horse trainer and with the full trust of KAMINS and GABBY also as an agent acting on their behalf to identify and locate a suitable horse or horses for GABBY. It was agreed that CHA CHA would be paid a sales

COMPLAINT

commission of no less than ten percent (10%) of any purchase price of a horse or horses by KAMINS.

15.    During the European trip described in paragraph 14, above, CHA CHA and GABBY toured the horse facility of Defendants, WALDMAN and WALDMAN HORSES, and reviewed horses offered for sale by the Defendants. After the presentation of horses to GABBY and CHA CHA by Defendants WALDMAN and WALDMAN HORSES, and at the instigation and approval by CHA CHA, GABBY elected to recommend the purchase of a horse by KAMINS. Accordingly, the horse known as *Grodino (Sire/Dam)* with the Registration No. 5743360 with the USEF was purchased from Defendants WALDMAN and WALDMAN HORSES by KAMINS on August 19, 2021, for a cash purchase price of $475,086.85 USD. The funds were wire-transferred by KAMINS to the Defendants on August 19, 2021. The horse has a barn name of *Dino* (hereinafter sometimes referred to as the "Horse" or "DINO"). A written Bill of Sale confirmed the sale transaction for DINO between KAMINS and Defendants WALDMAN and WALDMAN HORSES.

16.    At or about the time of purchase of DINO by KAMINS, the Defendants arranged for a limited veterinary examination of DINO. This occurred while CHA CHA and GABBY were at Defendants' sales facility in Europe. The veterinarian who conducted the examination was solely selected by Defendants. CHA CHA and GABBY had no opportunity to retain and employ an independent veterinarian to examine DINO before KAMINS payment of the purchase price for DINO on August 19, 2021. Defendants did

COMPLAINT

not provide KAMINS, GABBY or CHA CHA any pre-existing medical records or veterinary reports (history) of DINO at or before KAMINS purchase of DINO on August 19, 2021.

17. At all times mentioned hereinabove, specifically in Paragraphs 13 – 16, CHA CHA was an authorized agent and representative of WALDMAN and WALDMAN HORSES under actual, implied and ostensible agency law. Furthermore, on information and belief, Plaintiff alleges that CHA CHA was paid a sales commission as an agent by WALDMAN and WALDMAN HORSES in an unknown amount which was not disclosed by CHA CHA, WALDMAN or WALDMAN HORSES to the Plaintiff or GABBY at any time during Plaintiff's investigation and due diligence regarding the purchase of DINO or at any time thereafter.

18. After KAMINS purchased DINO, arrangements were made for DINO to be transported to the United States, particularly, the port of Los Angeles, California. DINO was placed in quarantine upon arrival in the United States. After quarantine the Horse was released to the possession, custody and care of CHA CHA as the fiduciary trainer and agent acting on behalf of KAMINS and GABBY. Further, CHA CHA continued to act as an agent with full authority on behalf of Defendants WALDMAN and WALDMAN HORSES.

19. DINO was taken to CHA CHA's horse and training facility located in Pacific Palisades, state of California following DINO's arrival at the port of Los Angeles,

California. Once DINO arrived at CHA CHA's horse and training facility on or about August or September of 2021 DINO showed signs of pain and physical distress. The Horse showed lameness and refused to jump or complete eventing training. Once the Horse exhibited these problems, CHA CHA and GABBY retained the services of multiple veterinarians to examine and opine on the physical condition and potential causes of DINO's exhibited physical problems. Initially, KAMINS and GABBY did not know and could not have known the true source or cause of the physical problems exhibited by DINO which negated and substantially interfered with KAMINS use of DINO as intended when KAMINS purchased DINO from the Defendants. With the advice of CHA CHA and retained veterinarians, DINO was placed in a rehabilitation program with the hope and expectation that DINO would recover through rehabilitation and reach a state where the Horse could compete at the highest level. During this time CHA CHA did not disclose and Defendants WALDMAN and WALDMAN HORSES did not disclose to the Plaintiff or to GABBY a pre-existing health condition such as a "bone spur" in DINO or other pre-existing health conditions which were known to WALDMAN and WALDMAN HORSES at and before the sale of DINO by the Defendants to the Plaintiff.

20.    After multiple months of rehabilitation and select veterinary care, it was determined that the Horse had a "bone spur" in its back which was causing pain to the Horse with resulting lameness. KAMINS and GABBY were never informed of this existing condition by the Defendants WALDMAN or WALDMAN HORSES at any time. In

particular, the Defendants WALDMAN and WALDMAN HORSES never disclosed a pre-existing health problem with DINO at or prior to the sale of the Horse to KAMINS. The pre-existing physical problems of DINO were not known and could not have been detected by any veterinarian performing a pre-purchase examination of DINO prior to KAMINS purchase of the Horse from the Defendants. In fact, when the pre-purchase examination occurred prior to KAMINS purchase of the Horse from the Defendants, no "bone spur" or other material physical defect in DINO was reported by the veterinarian who performed the pre-purchase examination.

21. After many months of attempted rehabilitation and without improvement, DINO persisted with lameness, discomfort and lack of the ability to perform its intended purpose. KAMINS then continued with retention of veterinary specialists in an effort to determine the continued health problems with DINO despite a lengthy rehabilitation effort. DINO was examined by retained veterinarians on or about May 15, 2024, again to determine the cause or causes of physical problems with DINO. At this time, it was determined that DINO had a pre-existing condition which prevented DINO from performing its intended purpose. The pre-existing condition, included, but was not limited to the presence of a "bone spur" at the Horse's spine. Once DINO was diagnosed with the existence of a "bone spur" on or about May 15, 2024, KAMINS consulted with retained veterinarians to determine if the "bone spur" existed or the Horse had a condition impaired by a bone spur or like condition before KAMINS purchase of DINO in August of 2021.

COMPLAINT

Following consultation with specialists in equine medicine, KAMINS was informed that the condition affecting DINO was a pre-existing condition limiting the Horses ability to compete as a sport horse which pre-existing condition was in existence before KAMINS purchased DINO from Defendants WALDMAN and WALDMAN HORSES. From and after the purchase of DINO by KAMINS, neither CHA CHA nor the Defendants ever disclosed to KAMINS or GABBY that DINO did have pre-existing physical problems before the sale by the Defendants of DINO to the Plaintiff. Such concealment made treatment of DINO and the attempted rehabilitation of DINO much more difficult and less likely to succeed. Ultimately, notwithstanding intensive veterinary care by KAMINS for DINO, DINO never recovered and never competed in competition.

22.    KAMINS continuously paid CHA CHA for training and expert equine assistance for DINO from and after August of 2021 until the late fall of 2025. KAMINS would not have made such payments or incurred such costs, but for KAMINS reliance on the integrity and truthfulness of Defendants in the initial sale of the Horse and the continued services of CHA CHA following KAMINS purchase of the Horse.

23.    KAMINS has made a demand on Defendants WALDMAN and WALDMAN HORSES for the return of the purchase price paid by KAMINS on August 19, 2021, in exchange for the return of the Horse by KAMINS to the Defendants. The Defendants have rejected the offer of recission and restitution made by KAMINS.

///

## COUNT I

## BREACH OF CONTRACT

(Against Defendant WALDMAN HORSES)

24.     Plaintiff realleges and incorporates by reference herein, paragraphs 1 through 23, inclusive, of the preliminary allegations, as though said paragraphs were set forth herein at length.

25.     KAMINS has performed all obligations and promises required by KAMINS under the *Bill of Sale*.

26.     WALDMAN HORSES has materially breached the *Bill of Sale* causing direct and proximate damages to KAMINS in an amount no less than $475,086.85 exclusive of incidental and consequential damages.

## COUNT II

## BREACH OF IMPLIED WARRANTY OF FITNESS

## FOR INTENDED USE AND SUITABILITY

(Against all Defendants)

27.     Plaintiff realleges and incorporates by reference herein, paragraphs 1 through 26, inclusive, of the preliminary allegations, as though said paragraphs were set forth herein at length.

28.     On or about August 19, 2021, KAMINS through GABBY and CHA CHA

12

COMPLAINT

made known to Defendants that KAMINS wanted to purchase a horse to be used in sport horse competition. KAMINS relied on the Defendants' skill and judgment to identify and furnish a horse that was a suitable good for use in sport horse equine competition.

29. Defendants WALDMAN and WALDMAN HORSES sold the Horse to KAMINS. KAMINS purchased the Horse based on the representations of the Defendants and particularly based upon the skill and judgment of Defendant WALDMAN.

30. When Defendants WALDMAN and WALDMAN HORSES sold the Horse to KAMINS, all Defendants knew or had reason to know that KAMINS was acquiring the Horse for use by GABBY in equine sport horse competition.

31. Before and at the time of the sale, KAMINS justifiably relied on Defendants' skill and judgment in identifying, procuring and ultimately selling the Horse to KAMINS as suitable for equine sport horse competition. This created an implied warranty by WALDMAN and WALDMAN HORSES that the Horse as a good was fit for this particular purpose.

32. Defendants WALDMAN and WALDMAN HORSES breached this implied warranty of fitness and suitability at the time of sale since at the time of sale and thereafter Plaintiff did not receive a suitable Horse and the Horse was not fit for the particular purpose for which it was acquired, namely, as a sport horse for competition.

33. Plaintiff has notified Defendants of the breach of implied warranty of fitness and suitability. Defendants have refused to cure the breach. Further, Plaintiff took

13

reasonable action to notify Defendants within a reasonable time that the Horse was not suitable for its intended use, particularly, by notifying Defendants' agent CHA CHA of the breach of the implied warranty of fitness and suitability following Plaintiff's purchase of the Horse and Plaintiff's knowledge of the Horse's physical defects which became known to the Plaintiff in May of 2024.

34.    Plaintiff has been harmed and damaged in an amount no less than $475,086.85 exclusive of incidental and consequential damages. Defendants' breach of the implied warranties regarding the Horse is and was a substantial factor in causing Plaintiff's harm and monetary damages.

35.    Plaintiff requests his reasonable attorneys' fees against Defendants pursuant to *California Civil Code* §1791.1, *et seq.*

## COUNT III

## INTENTIONAL MISREPRESENTATION

(Against all Defendants)

36.    Plaintiff realleges and incorporates by reference herein, paragraphs 1 through 35, inclusive, of the preliminary allegations, as though said paragraphs were set forth herein at length.

37.    Defendants made the representations stated above and concealed the facts stated above from the Plaintiff.

38.    The representations made by the Defendants were in fact false. The true facts

14

COMPLAINT

were that the Horse had a pre-existing history of physical injury and a progressive negative spinal condition causing permanent trauma and limitation of the physical condition and ability of the Horse to compete in sport equine events. This trauma manifested itself in a manner which caused the Horse a persistent condition of lameness and exhibited inability to perform its intended purpose which prevents the Horse from use of any kind in equine sport horse competition.

39.    Further, Defendants concealed the true facts stated in paragraph 38, above, from the Plaintiff.

40.    When the Defendants made these representations they knew them to be false and made these representations with the intention to deceive and defraud the Plaintiff and to induce the Plaintiff to act in reliance on these representations in the manner alleged hereinabove such as to enter into the purchase the Horse for $475,086.85. Moreover, when Defendants concealed the true facts from the Plaintiff, Defendants did so also with the intention to deceive and defraud the Plaintiff and to induce the Plaintiff to act in reliance on these representations in the manner alleged hereinabove such as to enter into the purchase the Horse for $475,086.85. Further, Defendants' failure to disclose to KAMINS and to GABBY the true facts regarding DINO's health caused KAMINS to further expend and incur reasonably foreseeable costs, fees and expenses to maintain, train and rehabilitate the Horse.

///

41.    Plaintiff at the time these representations were made by the Defendants and at the time the Plaintiff took the actions herein alleged was ignorant of the falsity of the Defendants representations and believed them to be true. Moreover, at the time Defendants concealed the true facts from the Plaintiff, Plaintiff was unaware of the true facts and had no means to independently verify the true facts since Plaintiff was relying on the Defendants as honest in their business dealings as sellers of high-end sporthorses and also by reason of Plaintiff's good-faith and justified reliance on Defendants' agent CHA CHA.

42.    In reliance on the representations made by Defendants and the concealment of material facts by the Defendants, Plaintiff was induced to and did purchase the Horse and did make payment to Defendants thereunder.

43.    Had the Plaintiff known the actual true facts he would not have taken such action. Plaintiff's reliance on the Defendants representations was justified due to the relationship between the Plaintiff who was relying on the skill and judgment of Defendant WALDMAN and further based on the special relationship with CHA CHA who also acted as an equine fiduciary agent for the Plaintiff in the purchase of DINO and later as a trainer for DINO once the Horse arrived in California from the Netherlands.

44.    As a proximate result of the fraudulent conduct of the Defendants, Plaintiff has been damaged in an amount of no less than $475,086.85.

45.    The aforementioned conduct of the Defendants was an intentional misrepresentation, deceit or concealment of a material fact known to the Defendants with

16

COMPLAINT

the intention by the Defendants of depriving the Plaintiff of property, legal rights or otherwise causing injury to the Plaintiff. This conduct was despicable and subjected the Plaintiff to cruel and unjust hardship with a conscious disregard of the Plaintiff's rights thereby justifying an award of exemplary and punitive damages in an amount to be established at trial.

## COUNT IV

## NEGLIGENT MISREPRESENTATION

(Against all Defendants)

46. Plaintiff realleges and incorporates by reference herein, paragraphs 1 through 39 and 41 through 44, inclusive, of the preliminary allegations, as though said paragraphs were set forth herein at length.

47. At the time Defendants made the misrepresentations of material fact and failed to disclose material fact the Defendants had no reasonable grounds for believing the representations of material fact to be true.

48. Plaintiff at the time these representations were made by the Defendants and at the time the Plaintiff took the actions herein alleged were ignorant of the falsity of the Defendants representations and believed them to be true. Moreover, at the time Defendants concealed the true facts from the Plaintiff, Plaintiff was unaware of the true facts and had no means to independently verify the true facts since Plaintiff was relying on the skill and judgment of the Defendants and their agent CHA CHA.

49. In reliance on the representations made by Defendants and the concealment of material facts by the Defendants, Plaintiff was induced to and did purchase the Horse and did make payment to Defendants thereunder.

50. Had Plaintiff known the actual true facts he would not have taken such action. Plaintiff's reliance on the Defendants representations was justified due to the skill and judgment of Defendant WALDMAN and by reason of the special relationship between the Plaintiff and CHA CHA, including the relationship between CHA CHA and GABBY, regarding the identification of the Horse for purchase and the basis for the Horse.

51. As a proximate result of the fraudulent conduct of the Defendants, Plaintiff has been damaged in an amount of no less than $475,086.85.

## COUNT V

## FRAUDULENT INDUCEMENT

(Against all Defendants)

52. Plaintiff realleges and incorporates by reference herein, paragraphs 1 through 51, inclusive, of the preliminary allegations, as though said paragraphs were set forth herein at length.

53. KAMINS consent to the purchase of the Horse was induced by the fraud of the Defendants as noted above. Specifically, KAMINS' consent to the purchase of DINO, and later payment of a purchase price for DINO to the Defendants was induced by KAMINS' justified reliance on the above-mentioned false representations of material fact

18

and concealment of material fact by the Defendants. By reason of Defendants' fraud and concealment, KAMINS' consent to purchase the Horse was obtained through fraud and therefore is legally voidable and subject to recission by order of this Court.

54. As a direct and proximate result of Defendants' false representations and concealment of material facts, Plaintiff has suffered and will continue to suffer economic harm and other monetary damages in an amount to be proven at time of trial.

## COUNT VI

## BREACH OF FIDUCIARY DUTY

(Against all Defendants)

55. Plaintiff realleges and incorporates by reference herein, paragraphs 1 through 54, inclusive, of the preliminary allegations, as though said paragraphs were set forth herein at length.

56. Plaintiff is informed and believes and on that basis alleges that CHA CHA was the actual agent acting on behalf of the Defendants, but also an agent acting on behalf of the Plaintiff at all times material to this Complaint. Defendants WALDMAN and WALDMAN HORSES by reason of the agency relationship with CHA CHA breached their fiduciary duty to the Plaintiff by failing to make the fullest disclosure of all material facts regarding the Horse and the underlying sale transaction confirmed in the *Bill of Sale*. This failure by these Defendants was a breach of their fiduciary duty to protect the Plaintiff and to put the Plaintiff's interest above those of the Defendants.

57.    As a result of Defendants' breach of their fiduciary duty to the Plaintiff regarding a full disclosure of the background health history and full history of the Horse, Plaintiff completed the *Bill of Sale* and paid Defendants the sum of $475,086.85.

58.    As a direct and proximate result of Defendants' aforementioned acts, Plaintiff suffered and will continue to suffer economic harm and other damages in an amount to be proven at time of trial, but in no event less than $475,086.85.

## COUNT VII

## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200, *et seq.* (UNFAIR COMPETITION LAW)

(Against all Defendants)

59.    Plaintiff realleges and incorporates by reference herein, paragraphs 1 through 58, inclusive, of the preliminary allegations, as though said paragraphs were set forth herein at length.

60.    Defendants have violated *California Business and Professions Code* § 17200, *et seq.* (Unfair Competition Law) by committing unlawful, unfair or fraudulent business acts or practices.

61.    These acts and practices include the unlawful, unfair or fraudulent acts and omissions by Defendants regarding the sale of DINO to the Plaintiff. The acts and practices of the Defendants were unfair, deceptive and untrue regarding communication and interaction between Defendants and Plaintiff in the sale of DINO as alleged herein.

62.    Defendants at all times alleged herein were in the business of selling horses of a type such as DINO.

63.    KAMINS has suffered injury by reason of the loss of the purchase price paid to the Defendants for DINO by reason of the unlawful acts and omissions of the Defendants as alleged herein. KAMINS has also suffered injury due to expenditures following the purchase of DINO as more particularly set forth herein.

64.    KAMINS seeks restitution from the Defendants for the purchase price and related costs and expenses paid to Defendants for DINO.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

As to the First Count for Breach of Contract

1. For compensatory damages in a sum according to proof, but in no event less than $475,086.85;

2. For consequential and incidental damages in an amount according to proof;

3. For interest at the legal rate from and after August 19, 2021;

4. For attorneys' fees and costs; and,

5. For such other and further relief as the Court deems proper.

///

///

COMPLAINT

As to the Second Count for Breach of Implied Warranty of Fitness for Intended Use

1. For general damages in a sum according to proof, but in no event less than $475,086.85;

2. For consequential and incidental damages in an amount according to proof;

3. For interests at the legal rate from and after August 19, 2021;

4. For attorneys' fees and costs; and,

5. For such other and further relief as the Court deems proper.

As to the Third Count for Intentional Misrepresentation

1. For general damages in a sum according to proof, but in no event less than $475,086.85;

2. For special damages in an amount no less than $500,000.00;

3. For exemplary and punitive damages in a sum according to proof at the time of trial;

4. For costs of suit herein incurred; and

5. For such other and further relief as the Court deems proper.

As to the Fourth Count for Negligent Misrepresentation

1. For general damages in a sum according to proof, but in no event less than $475,086.85;

2. For special damages in an amount no less that $500,000.00;

3. For costs of suit herein incurred; and

4. For such other and further relief as the Court deems proper.

As to the Fifth Count for Fraudulent Inducement

1. For general damages in a sum according to proof, but in no event less than $475,086.85;

2. For exemplary and punitive damages in a sum according to proof at the time of trial;

3. For an adjudication and order requiring Defendants, and each of them, to rescind the subject *Bill of Sale*; and

4. For such other and further relief as the Court deems proper.

As to the Sixth Count for Breach of Fiduciary Duty

1. For compensatory damages in a sum according to proof, but in no event less than $475,086.85;

2. For interest at the legal rate from and after August 19, 2021;

3. For attorneys' fees and costs; and,

4. For such other and further relief as the Court deems proper.

///

///

///

23

COMPLAINT

As to the Seventh Count for Violation of California Business And Professions Code §17200, *et seq.* (Unfair Competition Law)

1. For compensatory damages in a sum according to proof, but in no event less than $475,086.85;

2. For interest at the legal rate from and after August 19, 2021;

3. For such other and further relief as the Court deems proper.

Respectfully Submitted,

Dated:        April 23, 2026        CATANESE & WELLS
                                     A Law Corporation

By: _____
    T. Randolph Catanese
    Bradley W. Gould
    Attorneys for Plaintiff GARY KAMINS

## DEMAND FOR JURY TRIAL

Plaintiff GARY KAMINS hereby demands trial by jury on all causes of action triable by jury.

Respectfully Submitted,

Dated:        April 23, 2026        CATANESE & WELLS
                                     A Law Corporation

By: _____
    T. Randolph Catanese
    Bradley W. Gould
    Attorneys for Plaintiff GARY KAMINS

24

COMPLAINT